WIGGIN, Ex parte. See Case No. 17,060.

## Case No. 17,624.

### WIGGIN v. COFFIN.

[3 Story, 1.] [1]

Circuit Court, D. Maine. May Term, 1836.

MALICIOUS PROSECUTION—EVIDENCE OF MALICE—EXCESSIVE DAMAGES—NEW TRIAL.

1. Malice, in the sense of the law, does not presuppose personal hatred or revenge, but may, under certain circumstances, be implied either from a total want of probable cause, or from gross and culpable omission to make suitable and reasonable inquiries.

[Cited in Hamilton v. Smith, 39 Mich. 229.]

2. Any act is malicious, which is wrongfully and willfully done, with a consciousness that it is not according to law or duty.

[Cited in Gee v. Culver, 13 Or. 600, 11 Pac. 302.]

3. To support an action for a malicious prosecution, it must appear that the prosecution was both malicious and without probable cause.

[Cited in Folger v. Boyington, 67 Wis. 447, 30 N. W. 715.]

4. A new trial will not be granted for the purpose of introducing evidence, which, although newly discovered, is merely cumulative, or which was either known before, or might, by due diligence, have been discovered before the former trial. A verdict will not be set aside unless there be strong ground to believe, that the jury acted under some gross mistake of law or of fact, or under some improper bias, or undue influence.

[Cited in Taylor v. Carpenter, Case No. 13,785.]

[Cited in Florida Ry. & Nav. Co. v. Webster, 5 South. 720, 25 Fla. 421; Pegram v. Stortz, 6 S. E. 503, 31 W. Va. 253.]

5. Where, in an action for a malicious prosecution, the defendant openly admitted the innocence of the plaintiff, although he insisted, that he acted in the prosecution from probable cause, and the plaintiff admitted, that the defendant acted without bad motives, although rashly and improperly, and the jury gave a verdict for $1,500, it was *held*, on a motion for a new trial, that the present case was a case for compensatory and not for vindictive damages, and that, as the damages were excessive, the verdict should be set aside, and a new trial granted.

Case for a malicious prosecution. The declaration charged—that the said [George W.] Coffin, maliciously contriving to injure the said [Benjamin] Wiggin and to destroy his character and reputation, falsely, maliciously, and without any just or probable cause, made complaint and swore before the police court of Boston against the said Wiggin, that he, with one Walter Janes and others, at Bangor, did, on the 15th day of June last past, unlawfully and wickedly conspire together to defeat the sale of the lands of the commonwealth of Massachusetts offered for sale at public auction on the 19th day of June in Bangor, by bidding therefor, under a false pretence of purchasing the same, a greater sum than any other person would offer, whereby the said land was struck off to him and them, the sale thereof being thereby defeated, and the said commonwealth being thereby defrauded; that the said Wiggin, in virtue of a warrant sued out upon the said complaint, was arrested and brought before the said court at a distance of 250 miles from his home, and in a state other than that wherein he had his usual abode, and was ordered to recognize in the sum of $1,000 to appear and answer before the said court at a future day; that the said Wiggin was kept under arrest for eighteen days, within which time he was brought before the said court at four different times, at which the said Coffin was witness against him; and that the said court, after a full hearing of the case, adjudged that the said Wiggin was not guilty, and that there was not probable cause to believe that he was guilty, of the said supposed offence, and caused him to be discharged out of custody. The damages were laid at $5,000. Plea, the general issue.

At the trial at May term, 1835, a great deal

[1] [Reported by William W. Story, Esq.]

of evidence was offered on each side, the substance of which was as follows: To support the issue on his part, the plaintiff offered in evidence a complaint made by the defendant against the plaintiff before the police court in Boston. on the 20th July, A. D. 1833. charging the plaintiff with a conspiracy with one Janes et als. to defraud the commonwealth of Massachusetts: and a warrant founded on the said complaint, upon which the plaintiff was arrested and carried before the said court. He also offered a copy of the record of the said police court, by which it appeared. that, after examination, it was adjudged, that there was no probable cause to believe, that the plaintiff was guilty, as set forth in the complaint, and he was finally discharged.

The plaintiff also introduced Walter Janes as a witness upon the stand, who testified, that he was at the land sale at Bangor, which had been before referred to, and after he had bid off the three first townships. the plaintiff, who was also there, said to him: "Let me bid, as they will not run me, as they will you," and he accordingly bid upon one, which was struck off, and his (Wiggin's) name was mentioned as the purchaser, upon which he immediately said to the auctioneer: "Don't use my name." and some one then gave the name of Huntingdon. That the bidding by Wiggin was for him (Janes). That he never had any conversation with Wiggin previous to the sale about bidding at the sale. That he never saw Wiggin from the time he first learnt there was to be such sale, until he saw him at Bangor on the day immediately preceding the sale. That he did not know that Wiggin had any knowledge of his (Janes's) intention to bid. He further testified, that the defendant never asked him to exhibit any authority, or if he had any, and never asked him to perform the conditions of sale. That the defendant appointed Tuesday then next to meet him at the land office in Boston, to carry the sale into effect, but the defendant was not there on Tuesday as agreed. That he never told the defendant. that there had been an agreement between himself and a man at the eastward to bid off at the sale. That he never told him that he had seen the same person in Boston both before and after the sale. That he never told him, that while in Bangor, a paper of instructions was drawn up in Judge Williamson's office. and no such paper ever was drawn up. That he never insinuated, or gave Coffin to understand. that Wiggin was concerned in the transaction. and that the defendant never inquired, before the making of his complaint, whether Wiggin was concerned or not. That he never received any money or check from Wiggin in relation to that business. and that he never gave the defendant to understand, that he had received any money or pay from Wiggin. That he inquired of Coffin at the police court why he put Wiggin's name into the complaint. to which defendant replied, that it was necessary to do that in order to get hold of him (Janes). That he also

asked the defendant, if he had seen the affidavits made by himself and Wiggin, to which he replied, that he had. The witness then asked him if he was satisfied, that Wiggin had nothing to do with the business, to which he made no answer. That at the hearing before the police court the defendant testified, that it was not Wiggin, who gave the name of Huntingdon as the purchaser of the lot knocked off to Wiggin's bid, and that the defendant never mentioned Wiggin's name to the witness, either verbally or in writing, before he made the complaint, nor ever gave any intimation, that he attributed any blame to the plaintiff before he appeared in the police court. and that the witness told the defendant, that he was surprised, that he put Wiggin's name into the complaint, as he had nothing to do with the business. On cross examination he testified. that he did not inform the defendant before the sale, that he was authorized. to bid for Huntingdon. That he once borrowed a sum of money, a little over a hundred dollars, of the plaintiff. for which he gave him his note, and soon afterwards paid it. That this was before the sale, and before his failure in business. which was in April. That witness boarded in the same house with the plaintiff from the middle of February to. the first of March, and that the witness never saw him afterwards until he met him at Bangor the day before the sale. That he thought, that the money, which he had before stated he had borrowed of the plaintiff, was borrowed and repaid while they boarded together.

The plaintiff also introduced Samuel Veazie as a witness, who testified, that the defendant was reputed to be a man of property, and Thomas A. Deblois, who testified, that the house, which the defendant occupied in Boston. was worth from twelve to fifteen thousand dollars.

The defendant also introduced the deposition of N. O. Pillsbury, which is on file, and John Godfrey as a witness, who testified that he saw the plaintiff in Boston, in the latter part of April. 1833—he could not say whether it was before or after the land sale before referred to had been advertised.

W. P. Fessenden and Mr. Sprague, for plaintiff.

Godfrey & Longfellow. for defendant.

STORY, Circuit Justice. in summing up to the jury, said: There were two things, which must concur in the present case to entitle the plaintiff to recover. The first is the want of probable cause for the prosecution. The second is malice in the defendant in carrying on the prosecution. If either ground fail, there is an end of the suit. The learned counsel for the defendant has insisted, that where all the facts are proved, the question, whether there is probable cause or not for the prosecution is mere matter of law. Perhaps in the abstract this may be

in a certain sense true, where all the facts and circumstances are fully admitted and established. But even then, it is difficult to say, whether the question of probable cause is not an ultimate question of fact, to be determined by the jury under the exposition of the law by the court, applicable to the point.

In the present case, the jury must look to the whole evidence in order to arrive at the proper conclusion; for the facts are not all admitted; and in the conflict of evidence the jury must necessarily pass upon the comparative value and credibility of the testimony on each side. In respect to the question of probable cause it will mainly turn upon the following considerations. If the jury find that Wiggin was intimate with Janes in Boston in the months of February, March, and April, and after the advertisement by Coffin, as agent of the state of Massachusetts for the sale of the public lands at Bangor; and that Wiggin knowing Janes to be insolvent was apparently acting in concert with Janes at the sale, and did, in the name of Huntingdon and as his agent, actually bid off the township, and authorized it to be set down to Huntingdon as the highest bidder, having no authority so to do; or that Wiggin, acting in concert with Janes for a fraudulent and secret purpose of their own, and knowing that Janes had no authority from Huntingdon, allowed and countenanced Janes in having it set down to Huntingdon as the highest bidder; and further, that Janes made the statements to Coffin, which Coffin afterwards related to the attorney general of Massachusetts as testified to in the deposition of the latter; then it seems to me, that these facts, so established to the satisfaction of the jury, would constitute a probable cause for the prosecution on the part of Coffin, if he firmly and sincerely believed them, and had no knowledge of any other facts or circumstances, which ought to control the natural inferences derivable from them. These facts and circumstances seem in the evidence to be so connected together as to their bearing and influence on the case, that it is difficult to separate them, without impairing the force of all. They are links in one common chain of evidence, where one that is broken may essentially impair the use of the whole. If, on the other hand, the jury are not satisfied, that, in substance, the foregoing facts and circumstances are made out, so as justly to lead to a common presumption of their being parts or links of one meditated transaction, that does not seem a solid ground upon which to rest the conclusion that a probable cause for the prosecution is made out.

In respect to the other point, whether the prosecution was malicious, as well as without probable cause, (for both must concur to support the action), malice may be justly deduced from the total want of probable cause; for in the sense of the law that is a malicious act which is done wilfully by a party against his own sense of duty, and right. It has been truly said, that an act unlawful in itself and injurious to another is considered both in law and reason to be done with a malicious intent (malo animo) toward the person injured. Duncan v. Thwaites, 3 Barn. & C. 556. Malice in the sense of the law does not necessarily presuppose in the party a personal hatred or revengeful spirit against the party injured. It is sufficient to constitute it a malicious act, that it is wrongfully and wilfully done, with a consciousness that it is not according to law or duty. See Dexter v. Spear [Case No. 3,867]; Duncan v. Thwaites, 3 Barn. & C. 556; Pattison v. Jones, 8 Barn. & C. 578; Bromage v. Prosser, 4 Barn. & C. 247. See, also, U. S. v. Coffin [Case No. 14,824]; U. S. v. Taylor [Id. 13,624]. Mr. Justice Bayley laid down the true exposition in an important case, and said: "Malice in common acceptation means ill-will against a person; but in its legal sense it means a wrongful act done intentionally and without just cause or excuse." Bromage v. Prosser, 4 Barn. & C. 247. 255. And malice may not only be presumed from the total absence of probable cause; but also from gross and culpable negligence in omitting to make suitable and reasonable inquiries. A fortiori, it may be properly inferred, where the party has been guilty of gross misstatements for the purpose of misleading the prosecuting officers of the government, and to influence them to give wrong advice as to the right and duty to prosecute. If in the present case Coffin was guilty of wilful misstatements to the attorney general of Massachusetts for such a purpose, it would afford a very strong presumption of malice.

Verdict for plaintiff, $1,500.

A motion was subsequently made for a new trial, and argued at May term, 1836 (at Portland).

Godfrey & Greenleaf, for defendant.
Fessenden & Sprague, for plaintiff.

STORY, Circuit Justice. The motion for a new trial has been made upon two grounds: (1) Newly discovered and cumulative evidence. (2) That the damages are excessive. In respect to the first ground, the evidence is to the following points: (1) Wiggin's conduct at the sale of the land, his bidding off the same, and Janes being present. (2) Wiggin being in Boston and his intimacy there with Janes. (3) The discovery of Mr. Attorney General Austin's original letter. It is a general rule, that a new trial will not be granted for the purpose of introducing mere cumulative evidence, although newly discovered. For this I need not do more than refer to the cases of Ames v. Howard [Case No. 326], Steinbach v. Insurance Co., 2 Caines, 129, Smith v. Brush, 8 Johns. 84, and Pike v. Evans, 15 Johns. 210. Nor will a new trial be granted where, by due diligence, the facts

might have been discovered before the former trial. And this is strongly applicable to the letter of Mr. Attorney General Austin. A fortiori it will not be granted where the defect became known to the party at the trial, and he then had an opportunity of applying to the court for a continuance of the cause, to enable him to procure the evidence, and he elected to proceed with the trial. This is directly applicable to the same letter; for a copy was produced at the trial, and offered as evidence and rejected: and no delay was then asked for to search for or to obtain the original. In each of these views we should feel great difficulty in granting a new trial to let in the new or cumulative evidence. Neither will the court grant a new trial merely upon the ground, that the jury have come to a different conclusion as to the facts, or drawn a different conclusion from the facts, from that to which the court would have arrived, if it involved no palpable mistakes of law or fact. To justify the court in granting a new trial in cases of this sort, there must be strong ground to believe that the jury have acted under some gross mistake of law or fact, or under some improper bias, or some undue influence, which misled their judgment.

Then as to the second point, the excessive damages. It is here material to consider the state of the case as it was presented at the trial. It then turned altogether upon the question, whether the defendant had probable cause for the prosecution and whether he acted from malice. To establish the plaintiff's right to recover, it was necessary to show, that the defendant acted not only without probable cause, but also from malice. Both were requisite to be proved on behalf of the plaintiff in order to sustain the action. Malice might be inferred from the want of probable cause, under many circumstances, but it does not necessarily flow as a consequence from the want of probable cause. Now, at the trial, the plaintiff expressly admitted, that the defendant was not governed by any malignant motives, or bad passions, or wilful purposes. But the argument was, that his conduct was grossly rash, and against his true sense of duty, and under improper excitement. On the other hand, the defendant admitted, that he was now satisfied, that the plaintiff was not guilty of any offence; but he insisted that he, the defendant, acted at the time of the prosecution upon probable cause, and without any sort of malice, either in fact or in construction of law. What are the facts in evidence? The defendant was a public officer; and the question was whether he really acted within the line of his duty, and from a sense of duty, or otherwise. He asked the advice of the attorney general. Did he honestly state the case to the attorney general as he then believed the case to be? Did he honestly act under the advice of the attorney general? These constituted the chief grounds of inquiry upon which his defence rested at the trial.

The principal grounds on the other side to establish the want of probable cause and malice were: (1) That the crime was alleged in the complaint to have been committed in Boston; yet there was no proof that the plaintiff was at the time there, or entered into any conspiracy there. The plaintiff was in Boston before the 3d of March; but the defendant wholly failed in proving that he was there after that day. But it might nevertheless be true, that the defendant might have been informed and might have sincerely believed, that the plaintiff was in Boston after that day. Indeed, if Janes told him, what he asserted to the attorney general, Janes had told him, he had probable ground for believing it to be a fact. But it was said that Janes never gave any such information to the defendant, as the defendant asserted to the attorney; and if so, and the defendant wilfully misrepresented the fact to the attorney general, it was doubtless proof of malice. Janes certainly denied, that he ever gave such information to the defendant. And if his testimony was to be believed, then it was strong evidence against the defendant. But it was impossible not to feel at the trial, that Janes' credit was shaken, and that his testimony was open to many grave objections, that ought to have withdrawn from it any great credit. But the jury must have acted upon it and given it entire credit, or they could not have given their verdict for the plaintiff. Indeed they must have believed from that testimony, that the defendant acted from wilful, meditated malice, or they could not have given such a verdict as they did give. It is true that a court of law will not set aside a verdict upon the ground of excessive damages unless in a clear case, where the jury have acted upon a gross mistake of facts, or have been governed by some improper influence, or bias, or have disregarded the law. See Thurston v. Martin [Case No. 14,018]. But then in many cases the court is driven to such a conclusion from the actual circumstances in evidence, and the line of defence. If in the present case there was on the part of the defendant a want of probable cause; yet if he acted under a mistaken sense of duty, and without any intention of oppression, it was, at most, a case for compensatory and not for vindictive damages. It was a case for such compensation in damages as might fairly be allowed not only for the injury done to him, but also for the expenses, which he had incurred in vindicating his character from such an accusation. But as the defendant openly and freely admitted at the trial the entire innocence of the plaintiff, and attempted no justification, it was certainly not a case for vindictive damages. We think, that, under all the circumstances, the damages were excessive. The jury mistook their proper duty, and went far beyond what the facts and the law would justify. There was not even the ground shown, that the defendant was a

person of much property. Under such circumstances the question with the court has been, whether the verdict should be set aside absolutely, or to give the plaintiff an election to remit what the court should deem to be a clear excess. If we were satisfied that the case was a clear one, for reasonable damages, we might incline to adopt the latter course, as was done in Blunt v. Little [Id. 1,578]. But we are not satisfied that the case upon the evidence was a clear one for any damages. To say the least of the matter, we greatly doubt, and should have been better satisfied with a verdict for the defendant.

A new trial is therefore ordered; but the plaintiff must pay as a consideration of the new trial all the costs of the suit up to the present time. A new trial ordered.

The action was afterwards settled by the parties, and no new trial was had.