## LUCIEN ETCHBERRY *v.* JOSEPH LEVIELLE.

The intentional doing of a wrongful act with knowledge of its character, and without cause or excuse, is malicious.

Malice is of two kinds: malice in law—which is inferred from an act unlawful in itself, and injurious to another; and express or actual malice—which relates to an actual state or condition of mind to be established as matter of fact by the circumstances of each case.

It is not necessary, to constitute express malice, that the act should proceed from hatred or ill-will. It may be inferred from an apparent mischievous intention of the mind, or from inexcusable recklessness.

E. and L., being engaged in a game of shooting at a target by blowing a sharp arrow of steel through a tube, L. blew through the tube at E., and, notwithstanding the repeated remonstrances of E. and others, continued to do so until at last the arrow struck E. in the eye, severely wounding him so as to confine him to his bed for nearly four months and a half, and to cause the total loss of the eye.

*Held,* under the circumstances, sufficient to warrant an inference of actual malice, and to justify a verdict for vindictive damages.

The judge at the trial charged the jury that if the injury was purely the result of an accident, the defendant was liable only for actual damages; but, if the defendant acted with the intention of annoying, harrassing, or teasing the plaintiff, then the rule would be different; and in the latter case, even if the injury was unintentional, the jury might give more than the actual damages—they might give "smart money." *Held,* correct.

In actions for injuries to the person or character, it is not possible, in the nature of things, to ascertain or measure the extent of the injury by any absolute pecuniary standard. In such cases, the damages cannot be fixed and established in money by the evidence. The law cannot repair what has been done, or replace the party in so good a position as he was. All that it can do is to compel the party who did the injury to make a pecuniary satisfaction; and, in ascertaining what it shall be, all the circumstances under which the injury occurred, are to be considered.

In an action to recover damages for an injury to the person of the plaintiff, by the unlawful and malicious act of the defendant, it is neither a defence nor matter in mitigation that the plaintiff was engaged in an unlawful game upon the Sabbath at the time of the injury.

APPEAL by defendant from an order at special term denying a motion for a new trial. This was an action to recover damages for an injury to the person. The facts out of which the action arose, are very fully stated in the opinion of the court.

*Waldo Hutchins*, for the appellant.

I. The judge erred in refusing to charge, as requested by defendant's counsel, " that as the plaintiff was, at the time he sustained the injury complained of, present in a public or tippling house, engaged in playing a game which was in violation of law, he cannot recover damages for the injury complained of." Also, in refusing to charge " that, under the circumstances of the case, the plaintiff was guilty of negligence; and, therefore, cannot recover damages for the injury." And furthermore, in refusing to charge " that the fact that the plaintiff was at the time engaged in an amusement in an unlawful manner, might be taken into consideration in mitigation of damages." 2 R. S. (4th ed.) 83, § 66; *Bosworth* v. *Inhabitants of Swansey*, 10 Met. 363; *Stickle* v. *Richmond*, 1 Hill, 77; Sedg. Meas. of Damages, 468, and cases cited. II. The judge erred in charging the jury that if the act of the defendant was malicious, then the jury might give smart money. There was certainly no evidence in the case of express malice, or from which malice could be inferred, and it was there fore error on the part of the judge to submit the question of malice to the jury. *Krom* v. *Schoonmaker*, 3 Barb. S. C. 647; Sedg. on Meas. of Damages, 454, 455; 3 Greenl. Ev. §§ 14, 15, 144 to 147. III. The judge erred in charging the jury, that if the act was done with the intention to annoy or tease the plaintiff, then also they might give smart money. IV. The damages found by the jury were, under the circumstances, excessive.

*John Graham* and *George Carpenter*, for the respondent.

I. It is absurd to say, because a man is acting unlawfully himself, or is in an unlawful position, that, *civilly* speaking, any wrong can be done to him, without any responsibility attaching to the person who does it. II. To ask the court to charge the jury that the plaintiff was guilty of negligence, was asking the court to take the whole case from the jury. Why did not the defendant move for a non-suit at once? III. So long as the plaintiff did not contribute to his injury, it is difficult to see what his actions or conduct had to do with the defendant's mischiev-

ously putting his eye out.   How could they possibly qualify the *animus* of the defendant?   IV.  A malicious injury is always pun-ishable with exemplary damages.   There are different ways of showing malice.   *Annoyance* is one of the most marked.   The charge on this point is nothing but the assertion of a familiar principle.

By the Court, DALY, First Judge.—The defendant Levielle is the keeper of a liquor store in Thirty-third street.   On a Sunday afternoon in November last, he invited the plaintiff Etchberry to come to his store and take a glass of wine.   Etchberry accepted the invitation, and, while they were at the store, Levielle, and other parties who were there, commenced playing at a game. The game consisted in blowing a sharp piece of steel with feathers attached to it, through a tube, at a target.   When Levielle blew · the piece of steel at the target, Etchberry went up to count the game, whereupon Levielle blew through the tube at him, and the instrument or arrow struck him in the back collar of his coat. Levielle was then told, by a bystander, that he ought not to do it; that it was dangerous; that if Etchberry should turn his head it might hurt him.   But, not heeding this warning, he blew the arrow at Etchberry again, and struck him in the back.   Etch-berry then went up to Levielle in a menacing manner, and raised his fist to strike him.   Some hard words passed between them, Etchberry appearing to be in a passion.   Levielle laughing, and in good nature, and not excited.   A few minutes after, Etchbery being near the target, Levielle shot at him again; and, as Etch-berry stepped back from the target and turned his head, Levielle pointed the tube at him, blew through it again, and the instru-ment struck Etchberry in the eye.   The bystanders gathered around, Etchberry drew the instrument from his eye, and, as he did so, the blood started out, and he seemed to be suffering a great deal.   He went home, was laid up for four months and a half, keeping his bed nearly the whole of that time, suffered a great deal of pain, especially in the head, the inflammation lasting· three months and a half, and totally lost the use of his eye.   He

Etchberry v. Levielle.

was attended, during his sickness, by three physicians, whose bills amounted to over $800, and was put to other expense in the course of his sickness, amounting altogether to $112. He was a builder. He had to give up his business in consequence of the injury, and had not been able, up to the time of the trial—seven months after—to do any business. He was the father of six children, four of them dependent upon him for support. Upon this state of facts, the jury gave him $5000 damages.

The judge was requested to charge the jury that, as the plaintiff was present in a public tippling house engaged in playing the game out of which the injury arose, which was in violation of law, he could not recover damages for the injury; that under the circumstances he was himself guilty of negligence, and could not therefore recover; or, as he was engaged in an amusement in an unlawful manner, that that might be taken into consideration in mitigation of damages. Which instruction the judge refused to give. The judge, among other things, charged the jury that if the injury was the result purely of an accident, then the defendant was liable only for the actual damages; but that if the defendant acted with the intention of annoying, harrassing, or teasing the plaintiff after warning, then the rule would be different, even though the actual injury was unintentional. That if the act of the defendant was malicious, or such as he, the judge, had described—if it was done with the intention to annoy or tease the plaintiff; that then they might give more than actual damages—they might give smart money; but if not, then only the actual damages.

In this instruction, the judge distinguished between an injury proceeding from an act done with no mischievous or harmful intent, and an injury, though greater than was intended, the result of an act evincing a mischievous disposition to annoy, harrass, or tease. Holding, in effect, that in the one case the party whose act caused the injury would be responsible to the extent of the actual damage sustained, however harmless his intention; but, that in the other, the act would be malicious, and the jury might

go beyond the actual damages, and give smart money. This was a proper distinction. An act done with the intention of annoying, harrassing, or teasing, after due warning, is a malicious act, in the sense in which that word is understood in the law, and as it is applied in the question of damages. Malice has been comprehensively defined to be "the intentional doing of a wrongful act with knowledge of its character, and without just cause or excuse. *State* v. *York*, 9 Metc. 104; *Wiggins* v. *Coffin*, 3 Story, 7. We distinguish between malice in law—which is a mere inference or presumption of law—from an act, unlawful in itself, which is injurious to another, (*Duncan* v. *Thwaite*, 3 B. & C. 585;) and express or actual malice, which relates to the actual state or condition of mind of the person who did the act, and which is a question of fact upon the circumstances of each particular case. 2 Starkie's Ev. 674. To constitute express or actual malice, it is not necessary that the act should proceed from hatred or ill-will to the person injured; but it may be inferred from a mischievous intention of the mind, or from inexcusable recklessness. *Rex* v. *Harvey*, 2 B. & C. 268; 1 Russell on Crimes, 483, n. *i*; 6 Amer. Law Reg. 322. Such was the case here. The defendant may not have intended to put out the plaintiff's eye, or to do him any serious bodily harm; but he wantonly and recklessly persisted in shooting or blowing at him a sharp pointed instrument, impelled, according to the testimony, with great directness and force—an act highly dangerous, deliberately done, exhibiting a reckless disregard of the safety of others, and a wanton and malicious spirit of mischief. He repeated the act after he was urged to desist, and warned that it was dangerous; and when the plaintiff, provoked by the repetition of the assault, threatened to strike him, he persisted, did it again, and desisted only when the dart or arrow lodged in the plaintiff's eye. That this was acting maliciously in the sense in which the term is understood in the law, does not, in my judgment, admit of doubt. It evinced a deliberate intention to vex, injure, and annoy, regardless of consequences. The consequences were, probably, more serious than was intended; but the malicious act consisted in persistently

doing, against all warning and remonstrance, what involved the possibility of such a consequence. The object of punitory or exemplary damages is that they may operate as a punishment and restraint to the offender, and as a benefit and example to the community, (Sedgwick on Damages, 454; Mayne on Damages, 13); and certainly, conduct like this comes within the spirit and intent of this principle of the law of damages.

In actions for injuries to the person or character, it is not possible, in the nature of things, to ascertain or measure the extent of the injury by any absolute pecuniary standard. The value of an eye is not susceptible of exact and positive proof, like the value of a watch or a piece of furniture. In the one case a pecuniary compensation can be given, that may enable the injured party to replace what he has lost by a thing of equal value; but in the other the injury is irreparable. In such cases, therefore, it is idle to talk of the actual damage as a thing ascertainable or which can be fixed or established by evidence. The law cannot repair what has been done, or replace the party in as good a condition as he was. All that it can do is to compel the party who did the injury to make a pecuniary satisfaction; and, in ascertaining what it shall be, all the circumstances under which the injury occurred are to be taken into account, weighed, and considered. This necessarily includes the motive or intention with which the act was done. If the party who did the act contemplated or intended to injure, or if he knowingly, wantonly, and recklessly persisted in doing acts fraught with great danger or probability of injury, and which ultimately produced it, then, as a punishment, and to deter him from such conduct in future, and as a benefit and example to the community, he should be compelled to pay a greater sum as the pecuniary equivalent or satisfaction, than one who is liable, having caused an injury, but who had no design or intention to injure. This was substantially the distinction made by the judge upon the trial, divested of the language in which it was expressed. It was a just distinction, and one by which the jury had a right to be governed, under the circumstances of the case, in fixing the amount of damages.

The instruction requested was properly refused. There was nothing in the case to show that the plaintiff, by any negligence on his part, contributed to the injury. Even if he was engaged in an unlawful amusement or game upon Sunday, which is by no means clear upon the evidence, it furnished no legal excuse for the assault that was made upon his person, nor could it operate in mitigation of damages.

Order at special term, denying a new trial, affirmed.