Paetz *v.* Dain.

# IN GENERAL TERM, 1872.

ANNIE PAETZ *v.* THOMAS DAIN, Appellant.

Appeal from RAND, Judge.

ARREST—*what is cause for*—
FALSE IMPRISONMENT—*damage for.*

" Probable cause " will justify an officer in making an arrest, and the imprisonment of the offender, and if there is probable cause to believe that a person is insane, and is about to commit any mischief, which, if committed by a sane person, would constitute a criminal offense, such

Paetz *v.* Dain.

officer may detain the offender until it may reasonably be presumed that he has changed his purpose.

*J. S. Harvey*, for appellant.

*Gordon, Brown & Lamb*, for appellee.

Blair, J.—The plaintiff, who is a married woman, charges in her complaint, that the defendant, without any reasonable, or probable cause, arrested her, using great force, striking her, and tearing her clothes, and put her in the city prison, where she was imprisoned in a cell, in close custody, &c., for which she seeks to recover. The action was brought against the defendant Dain, and four others, but dismissed by the plaintiff before trial as to all except Dain.

The answer was in two paragraphs—the *first*, a general denial, and *second*, that the defendant was a policeman of the city of Indianapolis, and about two o'clock in the night time he found the defendant in the streets of said city, hallooing, and screaming, and threatening to break in the windows of a house with a club, and in such a state of excitement as to appear to be insane, and would not tell the place of her residence, and she was then taken to the station house, when her husband was sent for, and he took her home, and this is the grievance complained of.

The cause was tried by jury at Special Term, and a verdict rendered for the plaintiff in the sum of fifty dollars. A motion of the defendant for a new trial was overruled, excepted to, and an appeal taken to General Term. The Court gave the jury the following instruction, which it is claimed does not state the law correctly:

*Second*, If you believe from the evidence that defendant, without probable cause, arrested, and imprisoned plaintiff, then the law is for the plaintiff. But if you believe from the evidence that the defendant acted in good faith, and the plaintiff, by her boisterous, and excited manner, and by her

threats to break windows gave the defendant good ground to believe that she was insane, and would carry out her threats, then defendant would be justified in arresting her, and if he thought she was insane, it was his duty to take her home if he knew it, but if he did not know where her home was, then he would have the right to take her to the station house.    But if he knew where her residence was, he was not justified in taking her to the station house.

Any person may lawfully lay hold of a lunatic, or insane person about to commit any mischief, which, if committed by a sane person, would constitute a criminal offence, and detain him until it may reasonably be presumed that he has changed his purpose—4 Bl. Com., 293 N.    The evidence in the case before us shows that the plaintiff was in the street, in front of a saloon, where she said her husband was drinking, singing, and spending his money, while her children were at home suffering from want.    She admits that she was excited, and there was some evidence tending to show that she threatened violence to the door, or window of the saloon, but she desisted from that purpose when approached by the defendant, and she informed him what she wanted, that she wanted her husband out of the saloon.    The defendant went into the saloon, and returning reported that her husband was not in there.    She insisting that he was, was taken into custody, and taken to the station house, passing by the place where she resided, pointing to it, and asking to be taken home to her children.    Several witnesses say no violence was used, but the testimony of the defendant discloses the fact that there was struggling, and her dress became disarranged.    Arrived at the station house, she still insisted on being taken to her children, who were alone.    She was put in a cell, and the defendant, and three others started in search of her husband (the defendant stopping at a saloon on the way to get a drink.)    The husband was found at the saloon in front of which the plaintiff had been, and he immediately

went to the station house, the plaintiff was released, and she and her husband returned home.

We think, as applied to the evidence, the instruction was correct. The plaintiff was in anguish, and distress, but we see no reasonable grounds for supposing that she was insane, and after she pointed to her home, which was between the saloon and the station house, there was no reason why she should have been confined, even for a moment, in a cell. She had violated no law of the State, nor ordinance of the city, so far as was shown in the cause. The instruction left the question with the jury to find whether or not, the defendant knew where her home was, and they were told, if he did not know, he had a right to take her to the station house. We think it is as favorable toward the defendant as the evidence would justify, and he can not complain.

The judgment is affirmed.

---

NOTE.—Evidence is admissible in mitigation of damages that the defendant had ground to suspect that the plaintiff was guilty of the offense for which the arrest was made. *Rogers* v. *Wilson, Minor,* 407

The question as to what is a reasonable, and probable ground for suspicion is a mixed proposition of law, and fact. Whether the circumstances alleged to show it reasonable, or not, are true, and existed, and the inferences drawn from them warranted, is a matter of fact for the consideration of the jury; but whether, supposing them true, they amount to a reasonable ground for suspicion, is a question of law for the opinion of the Judge. *Panton* v. *Williams,* 1 *Gale. & Davison's Rep., K. B.,* 504; 2 *Adolphus & Ellis' Rep., K B.,* (N. S.), 69.

When the circumstances are such that a person must know why a man is about to apprehend him, he need not be told why, and the arrest will be legal, and the resistance illegal, as much so as if he had been told. 2 *Hale's P. C.,* 82, *and n*

Any person may arrest another for the purpose of putting a stop to a breach of the peace committed in his presence, and there seems no difference between the power of an officer, and that of a private individual in this respect. 2 *Hawkins, Ch.* 13, *Sec.* 8. *See also Roscoe's Crim. Ev.,* 239; *Foster's Cr. L.,* 272, 311.

(Under the New York Code, a justification on the ground that the defendant had reason to suspect that a criminal offense had been committed by the

Paetz *v.* Dain.

plaintiff must be pleaded specially, and the answers must first show the actual commission of an offense, and then the cause to suspect the plaintiff of its commission. If less than this is pleaded, or if the evidence comes short of this, it can only go to the question of damages. *Brown* v. *Chadrey,* 39 *Barb.*) *See* 2 *Greenl. Ev.,* 237, 238, 274.

The jury are to consider *inter alia* in the estimation of damages, bodily sufferings, mental agony, injury to reputation, the circumstances of indignity, and contumely under which the wrong was done, and the consequent public disgrace to the plaintiff, together with any other circumstances belonging to the wrongful act, and tending to the plaintiff's discomfort. 2 *Greenl. Ev., Sec.* 267, *and authorities cited.*

"Where an authority, or license is given by law, and the party exceeds, or abuses it, though without intending so to do, yet he is a trespasser *ab initio,* and damages are to be given for all that he has done, though some part of it, had he done nothing more, might have been lawful." 2 *Greenl. Ev., Sec.* 270, *and cases cited.*

"If there was on the part of the defendant a want of probable cause, yet if he acted under a mistaken sense of duty, and without any intention of oppression, it was at most a case for compensatory, and not for vindictive damages." 3 *Story,* 1. *See also Sedgwick on Damages,* 521, *et seq.*

"Where a ministerial officer acts in good faith, for an injury done, he is not liable to exemplary damages, but he can claim no further exemption where his acts are clearly against law." *Same,* 522.

"In vindictive actions, such as 'false imprisonment,' it is always given in charge to the jury, that they are to inflict damages for example's sake, and by way of punishing the defendant. *Same,* 521, 3, 4, 5. *See also* 4 *Wend.,* 113, 139—but vindictive damages can not be allowed where the wrong results from an error of judgment only—14 *La Ann,* 806, *and notes on page* 528, *et seq. Sedgwick on Damages. See also* 1 *Leading Crim. Cases,* (B. & H.) 177 *and notes;* 194, 195, *and notes;* 202, *and notes.*—[REPORTER.