ROUNDS v. DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY.

*Master and servant — liability of master for reckless enforcement of order — Charge to jury.*

After a train of cars had discharged its passengers, and was backing out of the depot, a boy jumped on the baggage car to ride. The baggage-man while the train was in motion at a dangerous place violently kicked the boy off the car, whereby he was injured. In the baggage car was a printed notice from the railroad company that no person except certain railroad employees should be allowed to ride on the baggage car, and another notice directing conductors and baggage-men to rigidly enforce the rule. In an action by the boy against the company for damages for the injury, *held*, that a charge that although the plaintiff was a trespasser if the baggage-man in the discharge of his duty pushed him off the train in an improper manner and at a dangerous place, defendant was liable, but if he was acting willfully and maliciously toward the plaintiff, outside and in excess of his duty, the baggage-man alone would be liable, was correct.

The court in charging on the question of damages told the jury " you should not allow any prejudice or hostility against railroads to warp your judgment or aggravate the damages ; your verdict should be the unbiased and deliberate expression of your honest judgment, such a verdict as a sound public sentiment will sustain." *Held* (BOCKES, J., dissenting), that the latter clause of the charge was not error.

MOTION for a new trial upon a case and exceptions ordered to be heard in the first instance at general term.

The action was brought by George M. Rounds, an infant, by his guardian, to recover damages for an injury received in being thrown or pushed off from one of the defendant's cars. It was tried at the Chenango circuit in May, 1873, where the plaintiff recovered a verdict of $5,000.

The accident occurred at Norwich, May 3, 1872. The defendant operated a broad-gauge railroad from Binghamton to Norwich, and a narrow-gauge road from Norwich to Utica. The passenger train from Binghamton, on this occasion, as usual, ran to the depot at Norwich and transferred the passengers and freight to the Utica train, and then backed south on a switch a distance of about sixty rods, to the round-house, to make up the new train which was to run back to Binghamton. The train consisted of the engine, an express car, a baggage and smoking car (one car divided into two compartments) and one passenger car. The conductor of the train got off with the passengers at the depot, and left it in charge of the baggage-man to run back on the switch and make up the new train. While the train was unloading and transferring the passengers at the depot, the plaintiff, a boy twelve years old, got on the platform of the baggage and smoking car, at the rear end, to ride down to the round-house. A quantity of wood was piled at one point along near the west side of the track, for a distance of over one hundred feet. While the train was backing down the track, and when it arrived at the wood pile, the baggage-man in charge of the train discovered the plaintiff on the platform, and ordered him off. According to the plaintiff's testimony, which is sustained by the verdict, he replied, "I can't; the wood is right here; I want you to help me. He (baggage-man) said, 'No, damn you; I will kick you off sooner than I will help you.' I had my overcoat on and he hit that, and I fell over against the wood pile, and fell back and one leg went under the cars." *Cross-examined:* "How long after he stepped out of the baggage car before he kicked you off? He did it right after we had the talk. Where did he hit you with his foot? A little below the seat of my breeches. Did it land you right against the wood? Yes, sir." *Re-direct*: "When he hit you with his foot, he hit you under the overcoat? Yes, sir; I had it buttoned up pretty tight, and his toe went under that, and he hit it and gave me a shove."

A printed notice was posted up in the baggage car, and another one near where the plaintiff was standing on the platform, as fol-

lows: "No person will be allowed to ride in this baggage car except the regular train men employed thereon. Conductors and baggage-men must see this order strictly enforced." Another printed notice was contained in the posted time cards, as follows: "Train baggage-men must not permit any person to ride in the baggage car except the conductor and news agent connected with the train. Conductors and baggage-men will be held alike accountable for a rigid enforcement of this rule."

At the close of the plaintiff's evidence, the defendant's counsel moved for a nonsuit, on the grounds: 1. The plaintiff was a trespasser, or wrongfully on the cars of the defendant, and is not entitled to recover. 2. The plaintiff, by his own negligence, contributed to the accident. 3. Upon the evidence the defendant was not guilty of any negligence or wrongful act, in reference to the plaintiff; the acts of Gow (baggage-man) which caused the injury were not authorized by the defendants, but were a willful and wanton assault by Gow upon the plaintiff, and for these acts and their consequences the defendant is not responsible to the plaintiff.

The court denied the motion and ruled that it was a question for the jury, whether the baggage-man was there acting within the authority of the company in putting the boy off, and whether he acted willfully and wrongfully, to which the defendant excepted. After the defendant had given evidence, contradicting the plaintiff's testimony, and at the close of the case, the defendant's counsel renewed his motion for a nonsuit on the same grounds, and also on the ground that no right of action was made against the defendant, and that the evidence does not warrant a submission of any question of fact to the jury which would authorize a recovery. The motion was denied, and the defendant excepted.

The court then submitted the following questions to the jury, to which the defendant also excepted : 1. Did Gow put the boy off the cars ? 2. Was he acting within the authority given him by the defendant ? 3. Was he acting maliciously, and in excess of his authority ?

The court then charged the jury, among other things, that the plaintiff was a trespasser on the car, but if the baggage-man nevertheless, in the discharge of his duty, pushed him off the train in an improper manner, and at a dangerous place, the defendant was liable, to which the defendant excepted. The court also charged the jury that if the baggage-man pushed the boy off the train, and

in doing so, was acting as the employee of the defendant in good faith in the discharge of a duty he owed the company, the defendant would be liable for his careless and negligent discharge of his duty (to which the defendant excepted), but if he was acting willfully and maliciously toward the plaintiff, outside of, and in excess of his duty, then the baggage-man alone would be responsible in law for the consequences. To which the defendant excepted. .

The court further charged as follows : "If you hold the defendant liable, the remaining question will be the amount of damages to which the plaintiff is entitled. This should be compensation for the injury and loss which he has sustained, as well as for the suffering he has endured. This sum is in your discretion, but should be arrived at by the exercise of your good sense. The defendant, though a corporation, is entitled to the same treatment as an individual. You should not allow any prejudice or hostility toward railroads to warp your judgment or aggravate the damages. Your verdict should be the unbiased and deliberate expression of your honest judgment ; such a verdict as a sound public sentiment will approve and sustain." To which last expression in reference to "a sound public sentiment," the defendant excepted.

*F. Kernan,* for appellant.

*E. H. Prindle,* for respondent.

COUNTRYMAN, J. The point is clearly presented on the various rulings at the trial to which exceptions were taken, whether any relation existed between the defendant and the plaintiff at the time of his misadventure, which imposed on the defendant any duty or obligation of care or protection toward him, at least as against personal injury directly caused by the positive acts of its own agents or servants. It must be allowed that the plaintiff had no right to be on the car at the time and place, and under the circumstances disclosed by the evidence. He was not a passenger or servant, nor entitled to be recognized as such for any purpose. He was not when discovered by the agent where the public had a right to be, so that the company on that account owed him any special duty whatever. He had entered the car without the knowledge or permission of the agents of the company, and in violation of its regulations, while its servants were engaged in the

performance of their legitimate duties. Is the defendant liable under such circumstances for an injury to the plaintiff which resulted from the wrongful acts of its servants while thus engaged in its service? It will be observed that the question is confined to the positive or affirmative acts of the servants directly producing the injury in contra-distinction to mere remissness or negligence on their part in the ordinary routine of duty which might have indirectly caused the same result, as by a collision or running off the track. In the latter case it must now be regarded as settled in this court, that no liability would have attached to the company. *Robertson* v. *New York & Erie Railroad Co.*, 22 Barb. 91; *Eaton* v. *Del., Lack. & West. Railroad Co.*, 13 Amer. Law Reg. 665 (Commission of Appeals); *Flower* v. *Pennsylvania Railroad Co.*, 69 Penn. St. 210 (8 Am. 251).

The Commission of Appeals in the case of *Eaton* v. *Del., Lack. & West. Railroad Co.*, *supra* (not yet reported in the regular series), very fully considered the latter question and distinctly decided that the company could not be held responsible for an injury to a person while riding on a coal train even by permission of the conductor, but against its regulations, where the injury was the result of a collision caused by the negligence of its servants in the management of the train. As the plaintiff had no right on the train and the conductor had no power to consent to his being there (such is the reasoning of the court), the company owed him no duty as a passenger and he remained there at his own risk, in reference to all the ordinary perils of the road. But the case is different when the injury is the immediate result of the personal interference and positive act of the servant, who was endeavoring at the time, in an improper manner, to enforce the rules of the company. It was doubtless the right and duty of the baggage-man in pursuance of his instructions to remove the plaintiff by force if necessary from the train, but this was not a duty to be performed regardless of time, place or circumstances. Even a wrong-doer has some rights which are entitled to protection. The lad had not, by his indiscretion, forfeited his life or his right to exemption from needless exposure to peril, and notwithstanding he was a trespasser, the baggage-man was bound to exercise his right with reason, and use proper care and prudence in putting him off the train. The servant in thus removing the plaintiff was engaged in the line of his duty and obeying the instructions of the

company, and to shield the defendant, therefore, from liability the instructions must have been reasonable and proper with reference to the rights of the plaintiff, and must have been executed under all the circumstances in a reasonable and proper manner. Having made suitable regulations, the defendant was also bound to see that they were properly executed. The principal must necessarily be answerable within reasonable limitations for the manner in which his instructions are carried into effect. This responsibility does not originate, in a case of this character, in any special relation the principal has assumed to the other party by virtue of an agreement between them, express or implied, but is founded on that primary obligation which every person in society owes to every other, to inflict as little injury upon an aggressor as is consistent with the preservation of one's own rights. It is immaterial to this inquiry whether the plaintiff was rightly or wrongly on the train. As a wrong-doer the principal would have been justified in removing him, but in doing so would have been bound to act with reasonable caution suitable to the circumstances, so as not to inflict unnecessary injury. This power can be delegated to an agent, but the agent, in its exercise, is subject to the same restrictions, and the principal is equally bound by the acts of the agent as if they were performed in person, while the agent is engaged in the execution of the power. And the principal must necessarily be bound by any lack of judgment or discretion of the agent, whereby he acts improperly and inflicts unnecessary injury. This rule has been recognized and the liability of railroad companies rigidly enforced in several precisely similar cases. *Lovett* v. *Salem, etc., R. R. Co.,* 9 Allen, 557; *Holmes* v. *Wakefield,* 12 id. 580; *Kline* v. *Central Pacific R. R. Co.,* 37 Cal. 400; *Sanford* v. *Eighth Avenue R. R. Co.,* 23 N. Y. 343. The learned judge was, therefore, strictly correct in his charge to the jury : "that although the plaintiff was wrongfully, and a trespasser, on the train, yet if the baggage-man, in the discharge of his duty, pushed him off the train in an improper manner and at a dangerous place, the defendant was liable."

It is insisted, however, that the evidence on which the verdict must now be sustained, conclusively shows that the act of the baggage-man in expelling the defendant from the train was willful if not malicious, and that the defendant, in any event, was not liable for the willful acts of its servants. The court, in denying the motion for a nonsuit, ruled that it was a question for the jury whether the

baggage-man "in putting the boy off the train acted willfully and wrongfully, or within the scope of his authority from the defendant;" and finally charged the jury on this subject as follows : " In doing that act was he acting as the employee of the defendant in good faith in the discharge of a duty he owed the company, or was he acting willfully and maliciously toward the plaintiff outside of and in excess of his duty ? In the former case the defendant would be liable for his careless and negligent discharge of his duty. In the latter case Gow alone would be responsible in law for the consequences." This was excepted to, and it is stated that the defendant's counsel insisted " that the instruction   *   *   *   was too unfavorable to the defendant, that it was not requisite that Gow should have acted maliciously as the defendant was not liable if he acted willfully and wantonly without any authority." But no request was made to submit any other or different proposition to the jury, nor was there any ruling or exception in reference to the proposition upon which the counsel insisted.

It is evident from all the rulings on this subject and the charge taken together, that the learned judge understood and used the words " willfully and maliciously " as conveying, in a legal sense, essentially if not precisely the same meaning. And it is not clear that he was in error. A " malicious injury " is defined to be " an injury committed wantonly, willfully or without cause." 2 Burrill's Law Dic. 175. The intentional doing of a wrongful act with knowledge of its character, and without cause or excuse, is malicious. *Commonwealth* v. *York*, 9 Metc. 93, 104;, *Wiggin* v. *Coffin*, 3 Story, 1, 7; *Etchberry* v. *Levielle*,.2 Hilt. 40. It is not necessary, to constitute express or actual malice, that the act should proceed from hatred or illwill, but it may be inferred from an apparent mischievous intention of the mind, or from inexcusable recklessness. *King* v. *Harvey*, 2 Barn. & Cress. 268 ; 1 Russell on Crimes, 483, note i; 6 Am. Law Reg. 322 ; *Etchberry* v. *Levielle*, 2 Hilt. 40. Malice, in the sense of the law, means willfulness. *Dexter* v. *Spear*, 4 Mason, 115.

But if the language, or the connection in which it was used, was liable to misconstruction, it was the duty of the counsel to have made a specific request to charge the particular proposition which he desired to have submitted to the jury, and having omitted to do so he should not now be permitted to raise a point founded upon a hypercritical rendering of the charge. It does not appear that the

court declined to charge the proposition in question, or that any exception was taken which presents the point whether the defendant was liable if the act of the agent was willful but not malicious. The charge, as made, was in accordance with the rule often asserted and recently re-affirmed in this State. *Jackson* v. *Second Avenue Railroad Co.*, 47 N. Y. 274 ; *Higgins* v. *Watervliet Turnpike & R. R. Co.*, 46 id. 23. It would be a fruitless task to undertake to harmonize all the cases bearing on this question, even in the court of last resort. While all apparently recognize the same rule, many of them have turned upon distinctions which are exceedingly astute and arbitrary. But all the authorities agree in requiring the court to submit the question to the jury whether the act of the agent was willful or malicious, whenever there is room for discussion as to the motives which prompted its performance. In this case it was clearly a question of fact upon all the evidence, and the verdict cannot therefore be disturbed. It may well be doubted whether the chief difficulty in the application of the rule by which the liability of the principal is to be determined, has not arisen from the effort to characterize and classify the acts and motives of the agent as willful and malicious, or the contrary. The true criterion of his liability, it would seem, should be whether the act of the agent was performed in the course of his employment, or while he was immediately engaged in the business of his employer. The *act*, and not the *manner* in which it is performed or the *mental* condition of the actor, should determine its relation to the service in which he is employed. If the act itself be in the line of his duty, and result in injury to another, the principal should be responsible whether the agent was acting in good or bad faith, negligently or willfully. It cannot, on principle, affect the quality of a given act, so far as its relation is concerned to the business or service which is the bond of connection between the employer and employed, whether it was the result of negligence, carelessness or malice. In either event the act *ipso facto* was or was not within the scope of his employment, without reference to the motives with which it was performed.

The reason of the distinction as commonly recognized is tersely stated by COWEN, J., in *Wright* v. *Wilcox*, 19 Wend. 343, 346, 347, as follows : "The law holds such *willful* act a departure from the master's business, * * * and a going into the servant's own independent business." With due deference this reasoning seems to be inconclusive and unsatisfactory. The same act is held to be

within the master's service when performed with a good motive, and a departure from his service in a new and independent business of the servant when performed with a bad motive. How can the act of an agent resulting in injury to another, which is within the line of his duty when carelessly or recklessly performed, be taken out of such business or employment when repeated under the same circumstances with a similar result, by the mere fact that it was performed from malicious motives? If a principal will employ an agent of reckless disposition, irascible temper, or ungovernable passions in a responsible position, requiring intelligence, tact and judgment, he should be answerable for his willful or malicious conduct as well as negligence, especially to those with whom he is brought in contact solely by means of such employment and while directly engaged in performing his duties, to the same extent as if he himself were possessed of the same temperament and had while performing the service committed in person the identical injuries. And the tendency of the later decisions seems to be in this direction. *Howe* v. *Newmarch,* 12 Allen, 49 ; *Ramsden* v. *Boston & Albany R. R. Co.,* 104 Mass. 117 ; *Higgins* v. *Watervliet T. & R. R. Co.,* 46 N. Y. 23 ; *Jackson* v. *Second Avenue R. R. Co.,* 47 id. 274. But it is unnecessary to pass on this question in this case, as it must be assumed on the verdict that the act of the baggage-man was neither willful nor malicious.

It is also insisted that the court erred in its remarks to the jury in relation to their rendering "such a verdict as a sound public sentiment would approve and sustain." If this could be regarded as a direction to the jury to consult public sentiment and be governed by it in arriving at their verdict, it could not be sustained. But such is not the meaning of the remark as is evident when it is read in connection with the preceding sentences in the charge. It was made in reference to the subject of damages and in the interest of the defendant. It was the conclusion of some deprecatory allusions to the prevalent prejudice and hostility to railroads followed by an expression of confidence that the jury would not allow their judgment to be warped by such prejudice or hostility, but would render a verdict which "should be the unbiased and deliberate expression of their honest judgments, such a verdict as a *sound* public sentiment would approve and sustain." The remark was in no wise calculated to injure or prejudice the defendant.

The motion for a new trial must be denied and judgment ordered on the verdict, with costs.

LANDON, J., concurred. BOOKES, J., also concurred, except as to the last proposition discussed in the opinion, and as to that point he dissented.

*Judgment for plaintiff.*